# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

NEDZIDA MARKOVIC,

        Plaintiff,

vs.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.

No. C15-2059-CJW

**MEMORANDUM OPINION AND ORDER**

      Plaintiff, Nedzida Markovic (claimant), seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for disability insurance benefits, under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* (Act). Claimant contends that the Administrative Law Judge (ALJ) erred in determining she was not disabled. For the reasons that follow, the court affirms the Commissioner's decision.

## *I.    BACKGROUND*

      Claimant was born in 1959, was 47 years old at onset of her alleged disability, and 54 years old at the time of the ALJ's decision. AR 26.[1] Claimant had post-high school training as a nurse assistant and past relevant work as a nurse assistant and teacher's aide. AR 46, 107, 212-15. Claimant was employed until February 2012, when

---

[1] "AR" refers to the administrative record below.

she was fired either for insubordination or because she was unable to perform tasks. AR 59-61.

On January 25, 2012, claimant filed an application for disability benefits, alleging disability beginning June 8, 2006. AR 11. Claimant alleged impairments included congenital cataract and left eye blindness, degenerative disc disease of the cervical and lumbar spine, depressive disorder, anxiety, and personality disorder. AR 14.

The Commissioner denied claimant's application initially and on reconsideration. AR 11. On December 5, 2013, ALJ Jo Ann L. Draper convened a hearing (AR 35-62) at which claimant and a vocational expert testified. *Id*. On February 14, 2014, the ALJ denied claimant's application. AR 28. The Appeals Council denied review, so the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981.

On July 15, 2015, claimant filed a complaint in this court. Doc. 3. On September 30, 2015, with the consent of the parties, the Honorable Chief Judge Linda R. Reade transferred this case to a United States Magistrate Judge for final disposition and entry of judgment. Doc. 11. The parties have briefed the issues, and, on January 7, 2015, this case was deemed fully submitted. Doc. 14. On February 19, 2016, this case was assigned to the undersigned United States Magistrate Judge for a ruling.

## II.   *DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF*

A disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. An individual has a disability when, due to his/her physical or mental impairments, he/she "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind

of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). If the claimant is able to do work which exists in the national economy, but is unemployed because of inability to get work, lack of opportunities in the local area, economic conditions, employer hiring practices, or other factors, the ALJ will still find the claimant not disabled. 20 C.F.R. §§ 404.1566(c)(1)-(8), 416.966(c)(1)-(8).

To determine whether a claimant has a disability within the meaning of the Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. *Id.* §§ 404.1520, 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707–08 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). "Substantial" work activity involves physical or mental activities. *Id.* § 404.1572(a). "Gainful" activity is work done for pay or profit, even if the claimant does not ultimately receive pay or profit. *Id.* § 404.1572(b).

Second, if the claimant is not engaged in substantial gainful activity, then the Commissioner looks to the severity of the claimant's physical and medical impairments. If the impairments are not severe, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment is not severe if "it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a); *see also* 20 C.F.R. §§ 404.1520(c), 416.920(c), 416.921(a); *Kirby*, 500 F.3d at 707.

The ability to do basic work activities means having "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include: "(1) physical functions such as walking, standing, sitting, lifting,

pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting." *Id*. §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987).

Third, if the claimant has a severe impairment, then the Commissioner will determine the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) and the demands of her past relevant work. If the claimant can still do her past relevant work, then she is considered not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). Past relevant work is any work the claimant has done within the past 15 years of her application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. *Id*. § 416.960(b)(1). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation omitted); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC is based on all relevant medical and other evidence. *Id*. §§ 404.1545(a)(3), 416.945(a)(3). The claimant is responsible for providing the evidence the Commissioner will use to determine the RFC. *Id*. If a

claimant retains enough RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC, as determined in Step Four, will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there is other work the claimant can do given the claimant's RFC, age, education, and work experience. *Id.* §§ 416.912(f), 416.920(a)(4)(v). The Commissioner must show not only that the claimant's RFC will allow him or her to make the adjustment to other work, but also that other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make the adjustment, then the Commissioner will find the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At Step Five, the Commissioner has the responsibility of developing the claimant's complete medical history before making a determination about the existence of a disability. *Id.* §§ 404.1545(a)(3), 416.945(a)(3).

If after these five steps, the ALJ has determined the claimant is disabled, but there is medical evidence of substance use disorders, the ALJ must decide if that substance use was a contributing factor material to the determination of disability. 42 U.S.C. § 423(d)(2)(C). The ALJ must then evaluate the extent of the claimant's limitations without the substance use. *Id.* If the limitations would not be disabling, then the disorder is a contributing factor material to determining disability and the claimant is not disabled. 20 C.F.R. §§ 404.1535, 416.935.

### III.   THE ALJ'S FINDINGS

The ALJ made the following findings:

(1)   The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.

5

(2) The claimant engaged in substantial gainful activity during the following periods: February 22, 2008, through February 28, 2012 (20 C.F.R. §§ 404.1520(b) and 404.1571 *et seq.*).

(3) However, there has been a continuous 12-month period(s) during which the claimant did not engage in substantial gainful activity. The remaining findings address the period(s) the claimant did not engage in substantial gainful activity.

(4) The claimant has the following severe impairments: congenital cataract and left eye blindness; degenerative disc disease of the cervical and lumbar spine; depressive disorder; anxiety disorder; and personality disorder (20 C.F.R. § 404.1520(c)).

(5) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.1520(d), 404.1525, and 404.1526).

(6) The claimant has the Residual Functional Capacity to perform light work as defined in 20 C.F.R. § 404.1567(b), except she could only occasionally climb, balance, stoop, kneel, crouch, or crawl, but should never climb ropes, ladders, or scaffolds. She is limited to tasks learned in thirty days or less involving no more than simple work-related decisions with occasional workplace changes. She has limited field of vision or depth perception, such that she should probably not be in a position where either field of vision or depth perception was required more than occasionally.

(7) The claimant is unable to perform any past relevant work (20 C.F.R. § 404.1565).

6

(8) The claimant was born on xxxx x, 1959, and was 47 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 C.F.R. § 404.1563).

(9) The claimant has at least a high school education and is able to communicate in English (20 C.F.R. § 404.1564).

(10) Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferrable job skills (*See* SSR 82-41 and 20 C.F.R. 404, Subpart P, Appendix 2).

(11) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 404.1569 and 2404.1569(a)).

(12) The claimant has not been under a disability, as defined in the Social Security Act, from June 8, 2006, through the date of this decision (20 C.F.R. § 404.1520(g)).

AR 11–28.

For the purposes of this ruling, it is important that the court note several things in the ALJ's decision relevant to the analysis. First, the ALJ noted claimant's date of birth, and, therefore, was aware that she was approximately three months and three weeks away from her 55th birthday at the time of her decision. AR 26. At the hearing, claimant specifically testified that she was 54 years old and gave her birthdate. AR 42. Claimant was represented by counsel at the hearing and her attorney also noted her age of 54, and stated that she "would come within the vocational medical guidelines if you find she's limited to sedentary work only." AR 41. In arriving at her decision, the ALJ considered testimony from a vocational expert. AR 27, 61-71. The ALJ presented hypothetical

questions to the vocational expert which included "a hypothetical individual who is closely approaching advanced age." AR 65. Claimant's attorney was provided an opportunity to question the vocational expert and did not pose any question related to claimant's age. AR 67-71. The ALJ asked claimant's attorney at the end of the hearing if there was anything else the attorney wanted to put on the record before she closed the hearing; counsel declined. AR 71. In her decision, the ALJ referenced the Medical-Vocational Guidelines, noting that "[i]f the claimant has solely nonexertional limitations ... [the] Guidelines provide a framework for decisionmaking (SSR 85-15)." AR 27.

## IV. DISCUSSION

The sole issue before the court is whether the ALJ erred in applying the Medical-Vocational Guidelines in a mechanical manner when the claimant was less than four months from fifty-five years of age, which would have placed her in the Advanced Age category. It is undisputed that her chronological age was less than 55 at the time of the ALJ's decision. It is also undisputed that, if claimant's application was evaluated under the advanced age category, then she would have been disabled under the Act.

As outlined above, at step five of the analysis, if a claimant is found to be unable to perform her past relevant work due to a serious impairment, as was the case with claimant, then the Commissioner will consider the claimant's RFC, together with vocational factors such as the claimant's age, education, and work experience, to determine if the claimant can perform other work. 20 C.F.R. § 416.920(g)(1). "Age" means a claimant's chronological age. 20 C.F.R. § 416.963. Although the burden shifts to the ALJ at step five to establish the claimant can perform other work, the burden of persuasion remains with the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

The Medical-Vocational Guidelines (Guidelines), sometimes referred to as the "grids," come into play at step five. The Guidelines "are a set of charts listing certain vocational profiles that warrant a finding of disability or non-disability." *McCoy v. Astrue*, 648 F.3d 605, 613 (8th Cir. 2011) (citing 20 C.F.R. Part 404, Subpart P, App. 2). "If the ALJ's findings as to RFC, age, education, and work experience fit any of the combinations of those criteria contained in the [Guidelines], then the ALJ must reach the conclusion (either 'disabled' or 'not disabled') directed by the relevant" portion of the Guidelines. *Reed v. Sullivan*, 988 F.2d 812, 816 (8th Cir. 1993) (internal quotations and citations omitted). The Guidelines improve the uniformity and efficiency of step five decisions. *Heckler v. Campbell*, 461 U.S. 458, 467-68 (1983).

Under the Guidelines, there are three age categories: a younger person (under age 50); a person closely approaching advanced age (ages 50 to 54); and a person of advanced age (age 55 or older). 20 C.F.R. § 404.1563(c)-(e); *see also* 20 C.F.R. § 416.963(c)-(e). If a person falls in a "borderline" age category, then ALJs are not to apply the age categories mechanically. 20 C.F.R. § 416.963(b). Rather, an ALJ is to "consider whether to use the older age category after evaluating the overall impact of all the facts" in the claimant's case. *Id*. The Guidelines then become a framework for analysis, but do not determine whether a claimant is disabled.

Whether a claimant falls into a borderline age category is not a bright line test. The Code of Federal Regulations only provides that a claimant falls within the borderline age category if the claimant is "within a few days to a few months of reaching an older age category." 20 C.F.R. § 416.963(b). The Social Security Administration has promulgated a manual to aid ALJs on this issue called the Hearings, Appeals and Litigation Law Manual of the Social Security Administration (HALLEX). Its guidance is not binding on courts, but is instructive.

> To identify borderline age situations when making disability determinations, adjudicators will apply a two-part test: (1) determine whether the claimant's age is within a few days to a few months of a higher age category; (2) if so, determine whether using the higher age category would result in a decision of "disabled" instead of "not disabled."
>
> If the answer to one or both is "no," a borderline age situation either does not exist or would not affect the outcome. The adjudicator will then use the claimant's chronological age.
>
> If the answer to both is "yes," a borderline age situation exists and the adjudicator must decide whether it is more appropriate to use the higher age or the claimant's chronological age. (Use of the higher age category is not automatic.)

HALLEX II–5–3–2 (S.S.A.), 2003 WL 25498826.

According to the HALLEX, an ALJ should use a "sliding scale" approach for determining which age category to use. *See* HALLEX II-5-3-2, 2003 WL 25498826 (S.S.A.).

> Under this approach, the claimant must show progressively more additional vocational adversity(ies)—to support use of the higher age—as the time period between the claimant's actual age and his or her attainment of the next higher age category lengthens.
>
> One finds additional vocational adversity(ies) if some adjudicative factor(s) is relatively more adverse when considered in terms of that factor's stated criteria, or when there is an additional element(s) which has adverse vocational implications. Examples of these additional vocational adversities are the presence of an additional impairment(s) which infringes upon— without substantially narrowing—a claimant's remaining occupational base; or the claimant may be barely literate in English, have only a marginal ability to communicate in English, or have a history of work experience in an unskilled job(s) in one isolated industry or work setting. (An isolated industry would be such as fishing or forestry.) Other adverse circumstances in individual cases may justify using the higher age category.

> Absent a showing of additional adversity(ies) justifying use of the higher age category, the adjudicator will use the claimant's chronological age—even when the time period is only a few days. The adjudicator need not explain his or her use of the claimant's chronological age.

*Id*.

In this case, claimant was less than four months away from turning 55 years of age. The ALJ's decision does not explicitly address whether she considered applying a borderline age category.

This case raises three questions for the court to address. First, was the ALJ obligated to consider the borderline age category? Second, was the ALJ obligated to expressly address the borderline age issue in her decision? Third, was any error the ALJ committed regarding the borderline age issue harmless based on a review of the record as a whole? The court will address each in turn.

### *A. Was the ALJ obligated to consider the borderline age category?*

"Exactly what constitutes a borderline situation is not defined by statute or regulation, other than the 'few days to a few months' language mentioned" in the regulations. *Phillips v. Astrue*, 671 F.3d 699, 703 (8th Cir. 2012) (referencing 20 C.F.R. § 404.1563(b)). The Eighth Circuit Court of Appeals has declined to draw a bright line test. *Id*. In *Phillips*, the claimant was four months away from the advanced age category. The *Phillips* Court found the claimant did fall within the borderline age category. *Id*. In reaching this conclusion, however, the Court found several other facts important.

> Importantly, in addition to the close time period between the categories, we conclude Phillips established at least one additional vocational adversity justifying the use of the higher age category. Namely, Phillips has no past relevant work, which in certain circumstances may be sufficient to establish an additional vocational adversity.

671 F.3d at 703. Therefore, the *Phillips* Court concluded that "while the Commissioner was not required to apply the higher age category, he was required to consider applying the next category." 671 F.3d at 704. Notably, in *Phillips*, the Court rejected the claimant's argument that her reduced vision constituted an additional vocational adversity. 671 F.3d at 702, 704. There is no explanation in *Phillips*, however, of what vision problems the claimant allegedly suffered, or why the Court rejected that argument.

In this case, the ALJ did not mechanically apply the Guidelines. Rather, the ALJ's decision reflects that she considered whether claimant was "impeded by additional limitations." AR 27. Further, the ALJ used the Guidelines as a "framework" for her decision, but not as "directing" her decision. *Id*.

This case is different than *Phillips* because claimant had a history of active employment until February 29, 2012. AR 14. The ALJ issued her decision on February 14, 2014. AR 28. Claimant's long history of employment lasting until shortly before the ALJ's decision distinguishes the facts of this case from *Phillips*. On the other hand, it is similar to *Phillips* because claimant points to her vision as an "additional limitation," making the conclusory assertion that "[g]ood vision is essential for many jobs." Doc. 12, at 8. Claimant has the burden of showing additional progressive adversities justifying the use of the older age category. *Stormo*, 377 F.3d at 806 (burden of persuasion remains with claimant); HALLEX II-5-3-2, 2003 WL 25498826 (S.S.A.). Claimant does not make any reference to the record, however, that would support a finding that as she was aging, her vision was getting worse. Again, *Phillips* is not helpful because it lacks facts and analysis on the issue of vision.

The record does not support a conclusion that claimant's vision impairment was getting worse with her age. Claimant was blind in her left eye, but this was a congenital condition. AR 14. The ALJ considered claimant's visual deficits and noted that medical records as recent as 2011 showed claimant had 20/20 to 20/50 vision in her right eye.

AR 22. On December 3, 2013, claimant testified she was able to see well out of her right eye with corrective lenses. AR 17, She can read, write, and watch television. AR 45. Obviously, claimant worked for many years with eyesight in only one eye.

There is simply nothing in the record that would support a finding that claimant had progressively additional vocational adversities as she approached age 55 that would support a borderline age category. Claimant's age, standing alone, did not require the ALJ to consider the borderline age issue. Accordingly, the court finds that the ALJ was not obligated to consider the borderline age category.

### B. Was the ALJ obligated to expressly address the borderline age issue?

The next question is whether, if the ALJ did consider the borderline age issue, she was obligated to expressly address it in her decision. The ALJ did not, in this case, explicitly reference the borderline issue. The plain language of 20 C.F.R. 404.1563(b) does not impose a requirement that the ALJ specifically make a finding regarding borderline age issues. In *Phillips*, however, the Eighth Circuit Court of Appeals reasoned that a court cannot determine if substantial evidence exists to support the Commissioner's decision if the ALJ does not explicitly address the issue, stating that "a mere statement by the Commissioner that he considered the borderline situation would likely suffice." *Phillips*, 671 F.3d at 706. In reaching its holding, however, the Court distinguished *Bowie v. Commissioner of Social Security*, 539 F.3d 395, 399 (6th Cir. 2008), which rejected a per se requirement that the ALJ expressly address borderline age categorization every time it might apply, by noting that in *Bowie*, "no additional vocational adversities existed to support the use of the higher age category." *Phillips*, 671 F.3d at 706.

In other words, *Phillips* did not lay down a per se rule that if a claimant reaches a particular age close to the next age category, the ALJ must expressly and mechanically address whether the ALJ considered the borderline age issue. Indeed, such a holding

would not be supportable by the plain language of the code. Rather, *Phillips* stands for the proposition that where there is some indication in the record that a claimant who is close in age to the next age category may also have additional progressive vocational adversities, then there must be something in the record showing the ALJ considered the issue for the court to determine if substantial evidence exists to support the ALJ's decision.

As noted above, in this case, there is nothing in the record, other than claimant's age, to suggest that she would qualify for a borderline age category. The court can determine that substantial evidence supports the ALJ's decision without the need to have the ALJ expressly state whether she considered the issue. Therefore, the court concludes that in this case the ALJ was not obligated to expressly indicate in her decision that she considered the borderline age issue.

Regardless, however, it appears from the record that the ALJ was fully aware of claimant's age and looked at evidence to determine whether a borderline age category was appropriate. The ALJ noted claimant's date of birth, and, therefore, was aware that she was approximately three months and three weeks away from her 55th birthday at the time of her decision. AR 26. The ALJ considered whether claimant was "impeded by additional limitations." AR 27. Further, the ALJ used the Guidelines as a "framework" for her decision, but not as directing her decision. *Id*. Finally, the ALJ did not rely solely on the Guidelines in making her disability determination; rather, she relied, as well, on testimony from a vocational expert. AR 27, 61-71.

All of this suggests the ALJ analyzed whether a borderline age category might be appropriate, even though she did not expressly say so. This case is very similar to *Weiland v. Astrue*, No. C11-0006, 2012 WL 195606 (N.D. Iowa Jan. 23, 2012). The ALJ in that case did not expressly address the borderline age category issue. The court affirmed the ALJ's decision, however, finding the ALJ did not mechanically apply the

guidelines. 2012 WL 195606, at *14. In reaching this conclusion, the court found it significant that the ALJ relied on testimony from a vocational expert and that the claimant did not identify "any additional vocational adversities to support the contention that the ALJ should have placed him" in the next age category. *Id.*[2]

Although it would, of course, be easier for courts to review ALJ's decisions if they expressly made such references, neither should courts mandate formulaic or mechanical recitations. *Cf.*, *e.g.*, *Behrens v. Pelletier*, 516 U.S. 299, 313 (1996) (stating that district court was not obligated to identify all of the basis in its order for denying qualified immunity, acknowledging the responsibility of the appellate court to review the record); *United States v. Zastrow*, 534 F.3d 854, 855 (8th Cir. 2008) (rejecting obligation that sentencing court mechanically recite § 3553(e) factors when arriving at a sentence). Based on the facts and circumstances of this case, the court can determine if there is substantial evidence in the record as a whole to support the ALJ's decision without the ALJ explicitly referencing whether she considered the borderline age category issue.

### C. Was any error regarding the borderline age issue harmless?

The last question is whether, if the ALJ erred regarding the borderline age issue, the error is harmless when reviewing the record as a whole. Harmless error analysis is applicable to step five determinations. *See Dawson v. Bowen*, 815 F.2d 1222, 1227 (8th

---

[2] The court is aware that the *Weiland* case was decided a little more than a month before the Eighth Circuit's decision in *Phillips*. Nevertheless, the court in *Weiland* found the "facts and circumstances underlying" that case was "more in line with" those in *Bowie* than with facts and circumstances of other cases where the courts found error when the ALJs did not expressly state whether they considered the borderline age issue. 2012 WL 195606, at *14. So, too, does this court find the facts and circumstances similar to those in *Bowie* and, as explained above, does not believe *Phillips* dictates a per se requirement that ALJs must expressly address the borderline age issue based on age alone.

Cir.1987) (applying harmless error analysis to step five). "To show an error was not harmless, [the claimant] must provide some indication that the ALJ would have decided differently if the error had not occurred." *Byes v. Astrue*, 687 F.3d 913, 917-18 (8th Cir. 2012) (applying harmless error analysis to question of whether the ALJ should have placed a claimant in the next age category pursuant to a borderline age issue).

Even if the ALJ should have considered the borderline age category and failed to do so, that does not end the inquiry. An ALJ is not obligated to place a claimant in a higher age category even if the borderline age issue applies. Rather, the ALJ is required to *consider* the factors and determine whether additional progressive vocational adversities exist which, in addition to claimant's borderline age, education, and work history, applying the greater age category is appropriate. 20 C.F.R. § 416.963(b). *See also Byes*, 687 F.3d at 918 ("According to the regulation, the ALJ is required only to '*consider* whether to use the older age category.'" (emphasis added by the court)).

As noted above, there is no evidence in the record of progressively worse vocational adversities, claimant had a high school education, and she had a significant work history. *See Harris v. Colvin*, No. 14-cv-2052, 2015 WL 1346476, at *7 (N.D. Iowa March 24, 2015) (finding the ALJ could reasonably conclude that a borderline situation did not exist justifying a higher age category where the claimant was more than five months from the next age category, did not have any additional vocational adversity, had a high school education, and had past work history). Accordingly, even if the ALJ failed to consider the borderline age issue, the court concludes that the claimant has not provided a basis to find that the ALJ would have placed her in the next age category. Therefore, any error was harmless.

## V. CONCLUSION

After a thorough review of the entire record, the court concludes there is substantial evidence in the record to support the Commissioner's decision. Accordingly, the court **affirms** the Commissioner's decision. Judgment shall be entered against claimant and in favor of the Commissioner.

**IT IS SO ORDERED** this 26th day of July, 2016.

_____
C.J. Williams
United States Magistrate Judge
Northern District of Iowa